FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN


ROBERT S. MATHES,[1] COMMISSIONER OF )
THE VIRGIN ISLANDS DEPARTMENT OF )
PLANNING AND NATURAL RESOURCES, IN )
HIS CAPACITY AS TRUSTEE FOR THE )
NATURAL RESOURCES OF THE TERRITORY )
OF THE UNITED STATES VIRGIN )
ISLANDS, and IN HIS CAPACITY  AS )           Civil No. 2006-229
ASSIGNEE OF THE CLAIMS OF L'HENRI, )
INC., )
                    Plaintiff, )
                                  )
          v.                      )
                                  )
VULCAN MATERIALS COMPANY and THE )
DOW CHEMICAL COMPANY, )
                                  )
                    Defendants. )
_____)

ATTORNEYS:

John K. Dema, Esq.
St. Croix, U.S.V.I.
     *For the plaintiff,*

Gordon C. Rhea, Esq.
Mt. Pleasant, SC
     *For the plaintiff,*

_____

     [1]  The Complaint originally named Dean C. Plaskett
("Plaskett"), former Commissioner of the United States Virgin
Islands Department of Planning and Natural Resources, as the
plaintiff in this matter.  Since that time, Robert S. Mathes
("Mathes") succeeded Plaskett as the Commissioner of the United
States Virgin Islands Department of Planning and Natural
Resources.  As such, Mathes is automatically substituted for
Plaskett as the plaintiff in this matter. *See* Fed. R. Civ. P.
25(d) ("An action does not abate when a public officer who is a
party in an official capacity . . . ceases to hold office while
the action is pending.  The officer's successor is automatically
substituted as a party.").

**Douglas C. Beach, Esq.**
**Carol Ann Rich, Esq.**
St. Thomas, U.S.V.I.
    *For defendant Vulcan Materials Company,*

**Richard H. Hunter, Esq.**
St. Croix, U.S.V.I.
    *For defendant The Dow Chemical Company.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is a pleading filed by the plaintiff in this matter, Robert S. Mathes ("Mathes," or the "Commissioner"), Commissioner of the United States Virgin Islands Department of Planning and Natural Resources ("DPNR"). That pleading, styled as a "Suggestion to Dismiss," invites the Court to dismiss this matter without prejudice for lack of subject-matter jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from the contamination of the Tutu Wells Aquifer (the "Aquifer"), which was, at one time, a significant source of drinking water for residents of St. Thomas, U.S. Virgin Islands. In the late 1980s, testing revealed elevated levels of certain chemicals that made the Aquifer's water unsuitable for human consumption. In 1995, the United States Environmental Protection Agency (the "EPA") put the Aquifer on the National Priorities List of severely-contaminated sites.

L'Henri, Inc. ("L'Henri") operates a dry-cleaning facility near the Aquifer.  EPA studies revealed the presence of contaminants on L'Henri's property, which had impacted groundwater quality to bring it outside the range of acceptable federal drinking water standards.

On August 5, 1996, the EPA issued a Record of Decision, in which it set forth a strategy to clean up the Aquifer pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675.  After consultations with the EPA, the DPNR approved the federal clean-up plan.[2]  That clean-up plan is still underway.

In February, 2005, the Commissioner and L'Henri executed an agreement, pursuant to which L'Henri assigned to the Commissioner all claims it may have arising from the Aquifer contamination (the "Assignment").  In March, 2005, this Court entered a consent judgment in a related matter based on L'Henri's liability for damages to natural resources as a result of the Aquifer contamination, captioned as Civil No. 1998-206 (the "*In re Tutu Wells Contamination Litigation*").  The consent judgment was entered against L'Henri and in favor of the Commissioner, in the amount of $23,282,550.

---

[2]  CERCLA requires state participation in a federally-initiated clean-up plan. *See* 42 U.S.C. § 9621(f).

In December, 2006, the Commissioner, in his capacity as trustee for the natural resources of the Territory of the Virgin Islands, and in his capacity as assignee of the claims of L'Henri, initiated this action against Vulcan Materials Company and the Dow Chemical Company (together, the "Defendants"). The Commissioner alleges that, during the course of its dry cleaning operations, L'Henri released chemicals, including tetrachloroethylene, a/k/a perchloroethylene ("PCE") into the ground above the Aquifer. He asserts that the EPA found that PCEs released from L'Henri contributed to the contamination of the Aquifer. The Commissioner alleges that the Defendants are the manufacturers and suppliers of the PCEs used by L'Henri, and that they failed to adequately warn users of the dangers posed by PCEs. He alleges that the Defendants' tortious conduct caused the contamination of the Aquifer.

Count One of the complaint asserts a claim based on negligence. Count Two is a claim for strict liability. Counts Three and Four allege causes of action for public and private nuisance. Count Five is a claim for contribution and indemnification. Count Six asserts a claim based on unjust enrichment and restitution. The complaint seeks monetary damages, including but not limited to the $23,282,550 amount of

the consent judgment.  It invokes the Court's jurisdiction

pursuant to 28 U.S.C. § 1332(a) ("Section 1332(a)").[3]

The Commissioner has filed a pleading styled as a

"suggestion of dismissal," recommending that this action be

dismissed without prejudice pursuant to Federal Rule of Civil

Procedure 12(h)(3) ("Rule 12(h)(3)").[4]  He contends that the

government of the Virgin Islands is not a "citizen" of a state

for the purpose of establishing diversity-of-citizenship

---

[3]  Section 1332(a) provides:

> (a)  The district courts shall have original
> jurisdiction of all civil actions where the
> matter in controversy exceeds the sum or value of
> $75,000, exclusive of interest and costs, and is
> between--
>
> > (1) citizens of different States;
> >
> > (2) citizens of a State and citizens or
> > subjects of a foreign state;
> >
> > (3) citizens of different States and in
> > which citizens or subjects of a foreign
> > state are additional parties; and
> >
> > (4) a foreign state, defined in section
> > 1603(a) of this title, as plaintiff and
> > citizens of a State or of different States.

[4]  Rule 12(h)(3) provides:

> If the court determines at any time that it lacks
> subject-matter jurisdiction, the court must
> dismiss the action.

Fed. R. Civ. P. 12(h)(3).

jurisdiction pursuant to Section 1332. He further contends that

there is no other basis upon which to invoke this Court's

jurisdiction.

The Defendants have filed an opposition, arguing in the

alternative that (1) the Commissioner's claims are "inextricably

tied" to CERCLA, and thus that this Court has original

jurisdiction over those claims pursuant to 28 U.S.C. § 1331

("Section 1331"), or (2) jurisdiction is appropriate in this

Court because the Commissioner's claims are completely preempted

by CERCLA.

A hearing on the jurisdictional issue was conducted on

August 6, 2009.

## II.  <u>ANALYSIS</u>

It is axiomatic that a federal court may not exercise

authority over a case for which it does not have subject-matter

jurisdiction. Fed. R. Civ. P. 12(h)(3); *Brown v. Francis*, 75 F.3d

860, 866 (3d Cir. 1996). Here, the parties do not dispute that

this Court does not have diversity jurisdiction under Section

1332. Indeed, the United States Court of Appeals for the Third

Circuit has explained that the government of the Virgin Islands

"cannot be considered a citizen for purposes of establishing

diversity of citizenship jurisdiction." *Brown v. Francis,* 75 F.3d

860, 865 (3d Cir. 1996). Thus, there must be some other

independent basis for the exercise of jurisdiction. *See Warren E.
Brown Tenants' Council v. V.I. Housing Auth.*, 1980 U.S. Dist.
LEXIS 8936, at *3 (D.V.I. June 3, 1980) (unpublished), *cited with
approval in Gov't of the V.I. v. Sun Island Car Rentals, Inc.*,
819 F.2d 430, 432 (3d Cir. 1987).  The Defendants contend that,
even if this Court lacks diversity jurisdiction, the
Commissioner's complaint in this case arises under federal law,
and thus supports federal question jurisdiction under Section
1331.[5]

To determine whether a case arises under federal law, courts
must look to the plaintiff's well-pleaded complaint. *U.S. Express
Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002).  "Under
the well-pleaded complaint rule, there can be no removal on the
basis of a federal question unless the federal law under which
the claim arises is a direct and essential element of the
plaintiffs case." *In re Community Bank of Northern Virginia*, 418
F.3d 277, 293-94 (3d Cir. 2005).  A case arises under federal law
if a right or immunity created by the Constitution or laws of the
United States is an essential element of the plaintiff's cause of
action. *Christianson v. Colt Ind. Operating Corp.*, 486 U.S. 800,
809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).  For jurisdictional

_____

[5]  Section 1331 provides that "[t]he district courts shall
have original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."

purposes, the Court does not concern itself with the question whether a plaintiff will ultimately be successful on the merits of his claims. *See id.* (citing *Bell v. Hood*, 327 U.S. 678, 681-82, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

Here, the complaint, on its face, asserts only territorial-law claims. However, the Court may nevertheless have federal question jurisdiction over the Commissioner's claims. The Supreme Court of the United States has developed two exceptions to the "well-pleaded complaint" rule: the complete preemption doctrine, *see Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir. 1989), and the substantial federal question doctrine, *see Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

## A.    Complete Preemption

Under the doctrine of complete preemption, when a purportedly state-law claim comes within the scope of an exclusively federal cause of action, it necessarily arises under federal law, and is completely preempted. *Scheibler v. Highmark Blue Shield*, 243 Fed. Appx. 691, 693 (3d Cir. 2007) (unpublished). The doctrine of complete preemption applies only when two circumstances are present: (1) when the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the plaintiff's cause of

action seeks to vindicate; and (2) when there is affirmative

evidence that Congress intended the federal cause of action to be

exclusive. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1,

9,123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Allstate Ins. Co. v. 65*

*Sec. Plan*, 879 F.2d 90, 93 (3d Cir. 1989) (citing *Railway Labor*

*Executives Ass'n v. Pittsburgh & Lake Erie Railroad Co.*, 858 F.2d

936, 942-43 (3d Cir. 1988)).  In the absence of explicit

direction from Congress, courts should be reluctant to find that

the "extraordinary pre-emptive power necessary for the complete

preemption doctrine" applies. *Railway Labor Executives Ass'n*, 879

F.2d at 940-41 (quotations omitted).

Therefore, the Court must determine whether CERCLA provides

a federal cause of action vindicating the same interests sought

to be vindicated by the claims asserted against the Defendants in

the Commissioner's complaint.

### 1.   Counts One through Five

Counts One through Four of the Commissioner's complaint,

though asserting different theories of liability, all seek to

recover damages for injuries caused to the natural resources of

the Virgin Islands.  Count Five seeks to hold the Defendants

responsible for their fair share of the costs associated with the

contamination.  Specifically, in Count Five, the Commissioner

seeks contribution and indemnity for costs stemming from the

consent judgment against L'Henri in the *In re Tutu Wells*

*Contamination Litigation.*

CERCLA provides a comprehensive mechanism for the cleanup of

hazardous waste and primarily aims to enable the efficient

cleanup of hazardous waste and ensure that cleanup costs are

borne by responsible parties. *See Burlington Northern and Santa*

*Fe Ry. Co. v. United States*, --- U.S. ---, 129 S.Ct. 1870, 1874

(2009). Section 113(b) of CERCLA provides that "the United

States district courts shall have exclusive original jurisdiction

over all controversies arising under this chapter[.]" 42 U.S.C. §

9613(b).

CERCLA imposes liability for costs of remedial action as

well as for "damages for injury to, destruction of, or loss of

natural resources, including the reasonable costs of assessing

such injury, destruction, or loss. . . ." *Id.* at 9607(a)(4)(C).

CERCLA also provides a federal cause of action for contribution

claims against parties who are liable or potentially liable under

the statute. *See id.* at § 9613(f)(1).[6] Significantly, only

---

[6] Section 113(f)(1) provides:

> Any person may seek contribution from any other
> person who is liable or potentially liable under
> section 9607(a) of this title, during or
> following any civil action under section 9606 of
> this title or under section 9607(a) of this
> title. Such claims shall be brought in
> accordance with this section and the Federal

"covered persons" as defined by the statute, commonly referred to

as potentially responsible parties ("PRPs"), are subject to

liability for cleanup costs, damages, or contribution under

CERCLA. *See id.* at §§ 9607(a), 9613(f)(1).

Title 42 U.S.C. § 9607(a) ("Section 9607(a)") sets forth the

following categories of PRPs under CERCLA:

> (1) the owner and operator of a vessel or a
> facility,
>
> (2) any person who at the time of disposal of any
> hazardous substance owned or operated any
> facility at which such hazardous substances were
> disposed of,
>
> (3) any person who by contract, agreement, or
> otherwise arranged for disposal or treatment, or
> arranged with a transporter for transport for
> disposal or treatment, of hazardous substances
> owned or possessed by such person, by any other
> party or entity, at any facility or incineration
> vessel owned or operated by another party or
> entity and containing such hazardous substances,
> and
>
> (4) any person who accepts or accepted any
> hazardous substances for transport to disposal or
> treatment facilities, incineration vessels or
> sites selected by such person, from which there
> is a release, or a threatened release which

---

> Rules of Civil Procedure, and shall be governed
> by Federal law. Nothing in this subsection shall
> diminish the right of any person to bring an
> action for contribution in the absence of a civil
> action under section 9606 of this title or
> section 9607 of this title.

42 U.S.C. § 9613(f)(1).

causes the incurrence of response costs, of a
hazardous substance[.]

42 U.S.C. § 9607(a).

Here, the Commissioner does not allege that the Defendants
owned or operated any facilities or vessels.  The Commissioner
also does not allege that the Defendants "arranged for disposal
or treatment, or arranged with a transporter for transport for
disposal or treatment, of hazardous substances."  There is also
no allegation that the Defendants "accepted any hazardous
substances for transport to disposal or treatment facilities,
incineration vessels or sites[.]"  Rather, the Commissioner
alleges that the Defendants were manufacturers and suppliers of
the PCEs that caused the contamination of the Aquifer.

While manufacturers or suppliers of hazardous substances may
be considered to be PRPs if they otherwise fall within one of the
four categories of "covered persons" listed in Section 107 of
CERCLA, the Court is unaware of any statutory or other authority
holding that an entity may be liable under CERCLA based solely on
the fact that it manufacturers or supplies such substances.  To
the contrary, "[i]t is clear that Congress did not intend CERCLA
to target legitimate manufacturers or sellers of useful
products." *Dayton Indep. School Dist. v. U.S. Mineral Prod. Co.*,
906 F.2d 1059, 1065 (5th Cir. 1990).

In *Burlington Northern and Santa Fe Ry. Co. v. United
States,* --- U.S. ---, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009), the
Supreme Court of the United States addressed the issue of whether
a manufacturer of hazardous substances was a PRP under CERCLA.
In that case, an agricultural chemical distributor (the
"Distributor") conducted operations on a parcel of land in
California.  As part of its business, the Distributor purchased
and stored various hazardous chemicals, including a chemical
known as D-D, which it purchased from Shell Oil Company
("Shell"), the manufacturer of D-D.  The California Department of
Toxic Substances Control and the EPA (together, the
"Governments") investigated the operations of the Distributor and
discovered significant soil and ground water contamination.  The
Governments exercised their CERCLA authority to clean up the
contamination.  Thereafter, the Governments commenced an action
under CERCLA for reimbursement of costs incurred in the
investigation and cleanup of the contaminated land.[7]  Following a
lengthy bench trial, the district court ruled in favor of the
Governments, finding that Shell was liable under CERCLA because

---

[7]  The Governments' case was consolidated with an action
brought by the railroads that owned the contaminated land for
contribution against the facility's owner and operator.  However,
analysis of that case is not relevant for present purposes.

it "arranged for" the disposal of hazardous substances through its sale and delivery of D-D. *See* 42 U.S.C. § 9607(a)(3).

The United States Court of Appeals for the Ninth Circuit affirmed, reasoning that while Shell was not a traditional "arranger" under Section 9607(a)(3), it could nonetheless be liable under a "'broader' category of arranger liability, in which disposal of hazardous wastes [wa]s a foreseeable byproduct of, but not the purpose of, the transaction giving rise to PRP status." *United States v. Burlington Northern and Santa Fe Ry. Co.,* 520 F.3d 918, 948 (9th Cir. 2008). Applying that test, the Ninth Circuit concluded that Shell had arranged for the disposal of a hazardous substance through its sale and delivery of D-D because

> Shell arranged for delivery of the substances to the site by its subcontractors; was aware of, and to some degree dictated, the transfer arrangements; knew that some leakage was likely in the transfer process; and provided advice and supervision concerning safe transfer and storage. Disposal of a hazardous substance was thus a necessary part of the sale and delivery process.

*Id.* at 950.

The Supreme Court disagreed. The Court explained that "[i]t is plain from the language of the statute that CERCLA liability would attach under [Section] 9607(a)(3) if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance." 129 S.Ct. at

1878.  It further explained that "[i]t is similarly clear that an

entity could not be held liable as an arranger merely for selling

a new and useful product if the purchaser of that product later,

and unbeknownst to the seller, disposed of the product in a way

that led to contamination." *Id.*  However, the Court acknowledged

that, in cases falling between those two extremes, the

determination of whether a manufacturer qualifies as a PRP may be

less clear. *See id.* at 1879.  The *Burlington* Court explained

that, because CERCLA does not define the phrase "arrange for," it

must be given its ordinary meaning. *See id.*

"In common parlance, the word 'arrange' implies action

directed to a specific purpose." *Id.*  Thus, the Supreme Court

held that, "under the plain language of the statute, an entity

may qualify as an arranger under [Section] 9607(a)(3) when it

takes intentional steps to dispose of a hazardous substance." *Id.*

Accordingly, the Supreme Court rejected the Governments'

argument that

> by including unintentional acts such as
> 'spilling' and 'leaking' in the definition of
> disposal,[8] Congress intended to impose liability
> on entities not only when they directly dispose

---

[8] CERCLA defines the term "disposal" as "the discharge,
deposit, injection, dumping, spilling, leaking, or placing of any
solid waste or hazardous waste into or on any land or water." 42
U.S.C. § 6903(3); *see also id.* at § 9601(29) (adopting the
definition of "disposal" contained in the Solid Waste Disposal
Act).

of waste products but also when they engage in
legitimate sales of hazardous substances knowing
that some disposal may occur as a collateral
consequence of the sale itself.

*Id.* at 1879-80.  To that end, the Court explained that,

[w]hile it is true that in some instances an
entity's knowledge that its product will be
leaked, spilled, dumped, or otherwise discarded
may provide evidence of the entity's intent to
dispose of its hazardous wastes, knowledge alone
is insufficient to prove that an entity "planned
for" the disposal, particularly when the disposal
occurs as a peripheral result of the legitimate
sale of an unused, useful product.  In order to
qualify as an arranger, Shell must have entered
into the sale of D-D *with the intention* that at
least a portion of the product be disposed of
during the transfer process by one or more of the
methods described in § 6903(3).

*Id.* at 1880 (emphasis supplied).  Ultimately, the *Burlington*

Court found that Shell could not be held liable under CERCLA

based on its status as the manufacturer of D-D and its mere

knowledge that spills and leaks of D-D occurred.

At the August 6, 2009, hearing in this matter, the parties

all agreed that the Defendants are not "arrangers," as defined in

*Burlington*.  The parties also agreed that the Defendants do not

fall within any of the other categories of PRPs under CERCLA.

Because they are not "covered persons" under the statute, the

Defendants are not subject to liability for cleanup costs,

damages, or contribution under CERCLA.  Thus, CERCLA does not

create a federal cause of action vindicating the same interest

that the Commissioner seeks to vindicate in Counts One through Five of the complaint in this matter.

Accordingly, the first prong of the complete preemption test is not satisfied with respect to Counts One through Five of the complaint, and the doctrine of complete preemption cannot provide a basis for this Court's jurisdiction over those counts.

### 2. Count Six

In Count Six, the Commissioner "seeks restitution of Defendants' wrongful profits, revenues, and benefits" "from defective products which caused environmental damages in the Territory." (Compl. 15-16, ¶¶ 91, 93.) Unlike the contribution and indemnity claim in Count Five, Count Six does not seek to hold the Defendants responsible for their share of the liability for the hazardous waste contamination. Rather, it seeks to prevent the unjust enrichment of the Defendants, who allegedly wrongfully profited from manufacturing products that contributed to hazardous waste contamination.

CERCLA does not provide for the recovery of profits or revenues earned by PRPs from the production and manufacturing of products containing hazardous waste. The first prong of the complete preemption test is therefore not satisfied. Accordingly, the doctrine of complete preemption does not provide a basis for federal question jurisdiction over the Commissioner's

restitution claim asserted in Count Six.[9] *See, e.g., Coffey v. Freeport-McMoran Copper & Gold Inc.,* 623 F. Supp. 2d 1257, 1273-74 (W.D. Okla. 2009) (holding that CERCLA did not completely preempt the plaintiff's state-law claim for unjust enrichment); *People ex rel. Ryan v. Northbrook Sports Club*, 1999 WL 1102740, at *3-4 (N.D. Ill. Nov. 24, 1999) (holding that CERCLA did not completely preempt the plaintiff's state-law restitution claim) (unpublished).

---

[9] It is unclear whether a Virgin Islands court has sustained, or even recognized a claim for "wrongful profits" as alleged in Count Six. Still, whether the Commissioner can actually recover under territorial law for the claims alleged in Count Six or any other count of the complaint presents a distinct question that is not properly before the Court. The Court's inquiry at this stage is jurisdictional, not merit based. Indeed, a state-law claim that is not completely preempted by federal law for jurisdictional purposes may nonetheless be displaced by federal law under other, non-jurisdictional species of preemption, which may be raised as affirmative defenses in any forum. *See generally Lazorko v. Pennsylvania Hosp.,* 237 F.3d 242, 248-49 (3d Cir. 2000) (contrasting the doctrine of complete preemption with "substantive preemption, which displaces state law but does not, as a defense, confer federal question jurisdiction"); *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir.2000) ("'Complete preemption,' which creates federal removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption'), which does not."); *see also* Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1486-87 (7th Cir. 1996) (explaining that the "'complete preemption doctrine' is actually a misnomer because it is not a preemption doctrine but, rather, a federal jurisdiction doctrine").

## B.    Substantial Federal Question

Even if the doctrine of complete preemption does not give

the Court jurisdiction over the Commissioner's claims, the

Defendants argue that Counts Five and Six of the complaint

nonetheless raise substantial and disputed questions of federal

law under CERCLA sufficient to confer federal jurisdiction.[10]

Under the substantial federal question doctrine, federal

jurisdiction exists over a state-law claim where the state-law

claim "necessarily depends on resolution of a substantial

question of federal law." *Franchise Tax Bd. v. Construction*

*Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 77

L.Ed.2d 420 (1983).  It is not enough that the court may have to

interpret federal laws or regulations.  Rather, "the vindication

of a right under state law [must] turn[] on some construction of

federal law." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478

---

[10]  With respect to the natural resource damage claims
alleged in Counts One through Four of the complaint, the
Defendants initially claimed that those counts raised substantial
federal questions because they sought damages in excess of the
CERCLA damages awarded in the *In re Tutu Wells Contamination*
*Litigation*.  Thus, the Defendants claim that Counts One through
Four are really challenges to the effectiveness of a CERCLA
remediation.  However, the Commissioner has stated that he "does
not challenge nor question the federally approved cleanup nor
wish to modify it. . . . [The Commissioner] does not seek damages
related to the cost of cleaning up the site nor does [he] intend
to take any action to interfere with the current cleanup." (Reply
to Opp'n to Suggestion to Dismiss 2.)

U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).  To

determine whether a district court has federal question

jurisdiction over a state-law claim, a three-part test applies.

The court must inquire (1) whether the state-law claim

necessarily raises a federal issue; (2) whether the federal issue

is "actually disputed" and "substantial;" and (3) whether the

exercise of federal jurisdiction would disturb "any

congressionally approved balance of federal and state judicial

responsibilities." *Grable & Sons Metal Products, Inc. v. Darue

Engineering & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162

L.Ed.2d 257 (2005).

The Court notes at the outset that there is a dearth of case

law addressing the issue of whether state-law claims such as

those alleged in Counts Five and Six of the complaint in this

case raise a substantial federal question under CERCLA sufficient

to confer federal question jurisdiction under the standard

outlined in *Grable.*[11]

---

[11]  In *New Mexico v. General Elec. Co.,* 467 F.3d 1223 (10th
Cir. 2006), the court, citing *Grable,* raised the issue of
"whether CERCLA's involvement with the state law claims was
sufficient to warrant the district court's independent exercise
of federal jurisdiction." *Id.* at 1242 n.29.  The court noted that
"the effect which federal law, namely CERCLA, might have upon the
scope of the State's [natural resource damages] claim . . .
weighed in favor of retaining jurisdiction." *Id.*  However, the
court expressly declined to decide the issue because it found
that jurisdiction was proper under 28 U.S.C. § 1367. *See id.*

In *Grable & Sons Metal Products, Inc. v. Darue Engineering &
Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), the
Supreme Court of the United States was confronted with this
seminal jurisdictional question.  In that case, the plaintiff,
Grable & Sons Metal Products, Inc. ("Grable") owned real property
that the Internal Revenue Service ("IRS") seized to satisfy a
federal tax deficiency. *Id.* at 310.  Grable received notice of
the seizure by certified mail before the IRS sold the property to
the defendant, Darue Engineering & Mfg. ("Darue"). *Id.*  Five
years later, Grable sued Darue in state court to quiet title.
Grable asserted that Darue's record title was invalid because the
IRS had conveyed the seizure notice improperly. *Id.* at 311.  The
governing statute, 26 U.S.C. § 6335(a) ("Section 6335(a)"),
provides that "notice in writing shall be given . . . to the
owner of the property . . . or shall be left at his usual place
of abode or business . . . ."  Grable maintained that Section
6335(a) required personal service, not service by certified mail.
*Id.* Darue removed the case to district court, invoking
jurisdiction under Section 1331 on the ground that Grable's claim
of title depended on the interpretation of Section 6335(a).

The Supreme Court affirmed the district court's conclusion
that removal was proper.  It found that the issue of whether
Grable received notice adequate under Section 6335(a) was "an

essential element of [Grable's] quiet title claim, and the
meaning of the federal statute [wa]s actually in dispute[.]" *Id.*
at 315.  The Court further found that the meaning of the tax law
was a substantial federal issue.  The Court explained that the
federal government had "a direct interest in the availability of
a federal forum to vindicate its own administrative action and
buyers (as well as tax delinquents) may find it valuable to come
before judges used to federal tax matters." *Id.*  Finally, the
Court noted that "it is the rare state quiet title action that
involves contested issues of federal law.  Consequently,
jurisdiction over actions like [Grable's] would not materially
affect, or threaten to affect, the normal currents of
litigation." *Id.* at 319.  Accordingly, the *Grable* Court concluded
that "there is no good reason to shirk from federal jurisdiction
over the dispositive and contested federal issue at the heart of
the state-law title claim." *Id.* at 320.

The Supreme Court revisited *Grable* in *Empire Healthchoice
Assur., Inc. v. McVeigh*, 547 U.S. 677, 126 S.Ct. 2121, 165
L.Ed.2d 131 (2006).  In *Empire*, the Supreme Court concluded that
the action, which had originally been filed in district court,
presented no substantial federal question under the well-pleaded
complaint rule.  In that case, a federally-funded health plan
sued one of its members in district court, invoking jurisdiction

pursuant to Section 1331.  The plaintiff health plan sought to
recover medical expenses it had paid when the defendant plan
member received a settlement from a tort action in state court.
*Id.* at 2128.  The plan member moved to dismiss for lack of
subject-matter jurisdiction, arguing that no federal question was
present.  *Id.*  The district court dismissed the action.  *Id.*

The Supreme Court affirmed that dismissal, holding that the
case did "not fit within the special and small category" provided
by *Grable*.  *Id.* at 2136.  The Court in *Empire* noted that, in
contrast to *Grable*, which presented "a nearly pure issue of
law[,] . . . .  Empire's reimbursement claim . . . is fact-bound
and situation-specific." *Id.* at 2137 (quotation omitted).  The
Court acknowledged that the government "has an overwhelming
interest in attracting able workers to the federal workforce,"
and "in the health and welfare of the federal workers upon whom
it relies to carry out its functions." *Id.*  However, it concluded
that those interests "do not warrant turning into a discrete and
costly 'federal case' an insurer's contract-derived claim to be
reimbursed from the proceeds of a federal worker's
state-court-initiated tort litigation." *Id.*

Here, the Defendants argue that Counts Five and Six of the
Commissioner's complaint raise a substantial, disputed federal
issue because the Commissioner seeks contribution, indemnity, and

restitution in the same amount as the damages awarded against

L'Henri in the consent judgment in the *In re Tutu Wells*

*Contamination Litigation,* which was a CERCLA case.  With respect

to the restitution claim alleged in Count Six, the Court finds

the Defendants' argument to be factually inaccurate.  In Count

Six, the Commissioner does not seek restitution in connection

with any conduct related to the consent judgment in the *In re*

*Tutu Wells Contamination Litigation.*  Rather, as stated above,

Count Six seeks to prevent the unjust enrichment of the

Defendants, who allegedly wrongfully profited from manufacturing

products that contributed to hazardous waste contamination.

The Defendant's argument that the contribution and indemnity

claims asserted in Count Five present a substantial federal

question is in essence a claim that the Commissioner is

attempting, through the Assignment of the claims of L'Henri to

the Commissioner, to hold the Defendants liable for a CERCLA

judgment.  In the Defendants' view, because Congress has provided

a mechanism for apportioning clean-up costs among "covered

persons" under CERCLA, the Court would have to look to CERCLA to

determine whether it would be appropriate to apportion part of

L'Henri's liability under the consent judgment to the Defendants

in this case.  However, as the Commissioner points out, the

Assignment specifically excludes claims for "payment for the

remedial investigation, claims for response costs and other costs
related to the administrative action pending with the United
States Environmental Protection Agency." (Assignment 1, ¶ 1, Feb.
2005.) Rather than seeking contribution or indemnity for any
amounts paid in relation to CERCLA liability, the Commissioner
stated at the August 6, 2009, hearing that he seeks only
contribution and indemnity for ancillary, non-CERCLA payments,
such as expenses L'Henri incurred in repairing roads that were
damaged from overuse by water trucks.

Moreover, even if the Commissioner sought contribution or
indemnity in connection with the CERCLA-related damages awarded
against L'Henri in the *In re Tutu Wells Contmaination Litigation*,
it does not necessarily follow that such claim raises a
substantial and disputed federal issue warranting federal
jurisdiction under *Grable*. Indeed, in contrast to *Grable*, where
the meaning of the federal statute at issue in *Grable* was the
"only legal or factual issue contested in the case," *Grable* 545
U.S. at 315, here, no such interpretation is necessary to decide
the Commissioner's contribution and indemnity claims. While the
Commissioner's right to relief on his claims may be limited by

CERCLA,[12] the meaning of CERCLA's provisions has not been placed in active dispute by the Commissioner's complaint in this matter. Thus, while the Commissioner's territorial-law claims bear some relation to federal issues in the sense that those claims arise out of a federally-supervised contaminated site, they do not raise an actually-disputed and substantial issue concerning CERCLA.

Accordingly, the Court finds that there is no federal question upon which to base jurisdiction in this Court pursuant to Section 1331. *See*, *e.g.*, *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) (finding no federal question where the complaint merely alluded to a federal contract); *City Nat'l Bank v. Edmisten*, 681 F.2d 942, 945 (4th Cir. 1982) (finding no federal question where the plaintiff banks' challenge to North Carolina's application of usury laws, while incorporated into the National Bank Act, did not turn on a question of federal law); *Standage Ventures v. Arizona*, 499 F.2d 248, 250 (9th Cir. 1974) (deeming no federal question to exist where "the real substance of the controversy . . . turns entirely

---

[12]  For instance, the Tenth Circuit has held that "CERCLA's comprehensive NRD scheme preempts any state remedy designed to achieve something other than the restoration, replacement, or acquisition of the equivalent of a contaminated natural resource." *General Elec. Co.*, 467 F.3d at 1247.  As such, "an unrestricted award of money damages-cannot withstand CERCLA's comprehensive NRD scheme." *Id.* at 1248.

upon disputed questions of law and fact relating to compliance

with state law, and not at all upon the meaning or effect of the

federal statute itself").

### III.  <u>CONCLUSION</u>

For the reasons stated above, this Court lacks jurisdiction

to hear the claims raised in this matter.  Consequently, this

action will be dismissed.  An appropriate Order follows.


S\_____
      **Curtis V. Gómez**
       **Chief Judge**